GUIDRY, Judge.
The plaintiff, James L. Simon, filed suit to recover damages for personal injuries he received in an automobile collision. Named as defendants were Paul L. Macri, the driver of the other vehicle; Pitre & McBride Jewelers, Maori’s employer; and, Commercial Union Insurance Company, the insurer of Maori’s employer. The parties stipulated to Maori’s negligence being the cause-in-fact of the accident and to the liability insurance coverage of Commercial Union Insurance Company. The trial judge awarded plaintiff $1,671.61 in damages, which included an award of $1,000.00 for general damages. Plaintiff appeals. We affirm.
The sole issue on appeal is the sufficiency of the award made for general damages.
On April 28, 1978, a Friday, around 11:00 P.M., plaintiff was driving his 1975 Toyota station wagon home after getting off work as a campus police officer at the University of Southwestern Louisiana. He was struck head-on by the defendant driving a 1977 Oldsmobile Toronado. The collision occurred near the intersection of University Street and Cameron Street in Lafayette, Louisiana.
The plaintiff testified that following the accident he remembered turning on his flashing signals and walking toward the rear of his car. He remembers being dizzy and disoriented. Several minutes after the accident, he lost consciousness and was transported by ambulance to Our Lady of Lourdes Hospital' in Lafayette.
At the hospital, x-rays of plaintiff’s head ■ and left elbow were made which proved to be negative. He regained consciousness and after remaining in the hospital under observation for several hours he was released. His parents took him to their home in Crowley, Louisiana, where his mother, a licensed practical nurse, monitored his condition every hour for the rest of the night according to instructions given by the hospital staff.
The following Monday plaintiff went to see his family doctor, Dr. Thomas L. McNeely, Jr., complaining of a stiff back, pain in his left shoulder and severe headaches. Dr. McNeely found evidence of tenderness in the regions complained of and concluded that plaintiff suffered a strain of the left shoulder, a strain of the lower dorsal spine and contusions of the above areas. An x-ray of the dorsal spine was negative except for scoliosis indicating the possibility of muscle spasm. There was no objective evidence of pronounced swelling, bruises or muscle spasm.
Two days later, May 3, 1978, plaintiff returned to Dr. McNeely still complaining of severe headaches and pain in the dorsal region of his back. Dr. McNeely administered physical therapy to the tender areas of plaintiff’s lower back and prescribed an analgesic and muscle relaxant to help relieve his pain.
The plaintiff continued to suffer severe headaches and returned to Dr. McNeely on May 5, 1978. Dr. McNeely advised him to continue taking his medication and to return five days later for another examination.
On May 10, 1978, some 12 days post accident, plaintiff returned to Dr. McNeely and reported that he was feeling better as the severity and duration of the headaches he was experiencing had begun to diminish. This was the last time he saw Dr. McNeely concerning his injuries arising out of the collision. Dr. McNeely did remember the plaintiff informing him on a subsequent occasion that the headaches persisted for two weeks after the above visit.
Dr. McNeely classified the injury to plaintiff’s lower back as a mild strain which would cause plaintiff pain from two to four weeks after his last visit. He testified that *287 hopefully the headaches would not last any longer than the time period mentioned above but that it was not unusual for post-traumatic headaches to last for many months. Dr. McNeely testified the plaintiff had no prior medical history of back or head injuries.
The plaintiff testified he suffered severe headaches for two weeks after the accident. During this period he was unable to read, watch television or do any chores around the house requiring exertion. Engaging in any of the above activities served only to increase the severity of the headaches he was suffering. His wife testified to his inability to undertake any activities during this period.
Two weeks after the accident, plaintiff returned to work as a campus police officer at the University of Southwestern Louisiana. He continued to suffer headaches and was assigned light duty. During the first two weeks of his return to work he was unable to work a full day due to the recurring headaches. Despite the pain he was experiencing, plaintiff testified that he refused to stop working because he needed the money to pay the expenses of the upcoming birth of his child. Plaintiff testified that gradually the frequency of the headaches diminished, stopping completely some two or three months after the accident. At the time of trial, he was no longer experiencing any pain from the injuries he received in the collision.
Appellate review of general damage awards [1] is limited to a determination of whether or not the trial court abused its much discretion. That is to say, an abuse of trial court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978) and cases therein cited.
In the instant case the trial court awarded plaintiff $1,000.00 in general damages. Although we consider the amount awarded to be very conservative we cannot conclude that it is less than the lowest amount which could be awarded based upon a reasonable evaluation of the evidence in the record. Having found no clear abuse of discretion by the trial court the judgment appealed from will be affirmed.
AFFIRMED.

. “General damages” are defined in Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) as “... those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or lifestyle which cannot really be measured definitively in terms of money.”